**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SA Hospital Acquisition Group, LLC, | Case No. 23-11367 (BLS) |
| Debtor. | **Hearing Date:  To be determined.**<br>**Objection Deadline: To be determined.** |

**PETITIONING CREDITORS' EMERGENCY**
**MOTION TO ENFORCE THE AUTOMATIC STAY**

Goldberg Healthcare Partners, LLC, Fairborz Saidara, Matthew Haddad, and Yoel Pesso (collectively, the "Petitioning Creditors"), by and through the undersigned counsel, hereby file their *Emergency Motion to Enforce the Automatic Stay and Motion for Sanctions* (this "Motion"), and move, pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)"), and Rule 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rule(s)") for the entry of an order: (i) enforcing the automatic stay against Twain GL XXV, LLC ("Twain GL"), Twain Financial Partners LLC ("Twain Financial," and together with Twain GL, "Twain"), Stinson LLP ("Stinson or Twain's Receivership Counsel"), MorrisAnderson & Associates, Ltd. (the "Receiver"), Thompson Coburn LLP ("Thompson" or "Receiver's Receivership Counsel"), American Healthcare Systems Missouri, LLC ("AHS"), Carmody MacDonald P.C. ("Carmody" or "AHS' Receivership Counsel" and collectively with Twain, Stinson, Receiver, Thompson, AHS, and Carmody, the "Violating Parties") and preventing any further prosecution of the Receivership Action (as defined herein) or other violations of the automatic stay without further order of this Court; (ii) determining that certain, or all, of the Violating Parties have committed acts that constitute a willful violation

6893964/10/22516.000

of the automatic stay; (iii) holding that the September 1 State Court Order (defined herein) is void *ab initio*; (iv) awarding the Petitioning Creditors actual damages, including expenses and attorney fees, and punitive damages; and (v) granting any additional and further relief as this Court deems just and equitable. In support thereof, the Petitioning Creditors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The automatic stay set forth in section 362 is a bedrock principle of American bankruptcy law, designed not just to provide honest debtors and their estates with the breathing spell necessary to reorganize, but also to protect creditors from the aggressive actions of others. The goal, help ensure the pro rata distribution of estate assets in accordance with the priorities set forth in the Bankruptcy Code.

2.      Here, the Petitioning Creditors notified the Violating Parties of the automatic stay when the Petitioning Creditors' counsel, and Defendant State Counsel (defined herein), provided notice of the involuntary petition in writing to the Violating Parties. Despite such knowledge of the automatic stay, the Violating Parties have flatly ignored the automatic stay and have proceeded – and are continuing to proceed – in the Receivership Action, resulting in the post-petition diminution of the Debtor's estate (the "Estate").

3.      This Court cannot condone such an open, knowing, and blatant violation of the automatic stay. Accordingly, and for the reasons set forth below, this Court should immediately enforce the automatic stay and grant actual and punitive damages to prevent further violations of the automatic stay.

6893964/10/22516.000

## JURISDICTION AND VENUE

4.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.       The statutory predicates for the relief requested herein are sections 105(a) and 362(a) of the Bankruptcy Code, along with Federal Rules of Bankruptcy Procedure 9014 and Local Rule 9013-1.

6.       Pursuant to Local Rule 9013-1(f), if it is determined that the Court, absent consent of the Parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution, the Petitioning Creditors consent to the entry of a final order in connection with this Motion.

## BACKGROUND

7.       SA Hospital Acquisition Group, LLC (the "Debtor") is a guarantor of debt incurred by SA Hospital Real Estate Holdings, LLC (the "Tenant").

8.       The Petitioning Creditors are creditors of the Debtor, collectively holding at least $3,770,000 in undisputed claims against the Debtor. *See* [D.I. 1].

9.       Twain GL is the fee owner of approximately 7.148 acres of real property located in the City of St. Louis, Missouri (the "Premises").

10.       On May 15, 2023, Twain GL commenced litigation against both the Debtor and the Tenant in the Circuit Court of the City of St. Louis, Missouri (the "State Court"), seeking an emergency appointment of a state court receiver of the Debtor and Tenant, their property, and their operations. This case was assigned Case No. 2322-CC00960 (the "Receivership Action").

11.       Stinson is counsel for Twain in the Receivership Action.

3

12.    May 25, 2023, the State Court appointed MorrisAnderson & Associates, Ltd. (the "<u>Receiver</u>") as receiver of the Debtor and Tenant, their operations, and their assets (the "<u>Receiver Order</u>"). A true and correct copy of the Receiver Order is attached hereto as <u>Exhibit 1</u>.

13.    Thompson is counsel for the Receiver in the Receivership Action.

14.    On May 31, 2023, the Receiver filed its bond and took its position as general receiver over the Debtor and Tenant.

15.    AHS is, upon information and belief, a creditor of the Debtor that has provided secured financing to the Receiver.

16.    Carmody is counsel for AHS in the Receivership Action.

17.    Upon information and belief, on June 14, 2023, the State Court entered a financing order permitting the Receiver to obtain secured financing from AHS to provide financing to the Receiver of up to $2 million every four weeks, to fund hospital operations. A true and correct copy of the State Court docket is attached hereto as <u>Exhibit 2</u>.

18.    Upon information and belief, on June 21, 2023, the State Court entered a second financing order permitting the Receiver to obtain secured financing from Twain Financial to provide financing to the Receiver of up to $2 million every four weeks, to fund hospital operations. *See id.*

19.    On August 3, 2023, the State Court entered a third financing order (the "<u>August 3, 2023 Order</u>") permitting the Receiver to obtain secured financing from Twain Financial to provide financing to the Receiver of up to $2 million. A true and correct copy of the August 3, 2023 Order is attached hereto as <u>Exhibit 3</u>.

20.    The August 3, 2023 Order confirmed Twain Financial's funding would be used only for limited purposes, as needed to: (1) collect accounts receivable and liquidate other assets

4

of the receivership estate; (2) take necessary precautions for the movement and safety of hospital patients; and (3) cover certain fees and out of pocket expenses incurred by the Receiver and its attorneys going forward. *See id.*

21.     Upon information and belief, the August 3, 2023 Order granted Twain Financial a first priority lien and a second-priority lien on certain "Receivership Property" (as defined in the Receiver Order) which was deemed perfected without further filing or notices. *See id.*

22.     On August 11, 2023, Jeffrey Ahlholm and Lawrence E. Feigen, purportedly as a co-managing members of the Debtor, filed a voluntary chapter 11 petition in the U.S. Bankruptcy Court for the Central District of California, and this case was assigned Case No. 9:23-bk-1690-RD (the "Voluntary Bankruptcy").

23.     On August 15, 2023, Twain GL sought dismissal of the Voluntary Bankruptcy on the grounds that, pursuant to the Receiver Order, the Receiver was vested with the sole authority to commence a voluntary bankruptcy on the Debtor's behalf. *See* [Voluntary Bankruptcy, D.I. 5].

24.     On August 21, 2023, the California Bankruptcy Court granted Twain GL's motion to dismiss, thereby terminating the Voluntary Bankruptcy. *See* [Voluntary Bankruptcy, D.I. 26].

25.     Furthermore, on August 25, 2023, a proposed class-action lawsuit for former employees of the shuttered South City Hospital in south St. Louis was filed in the United States District Court for the Eastern District of Missouri, assigned as case number 4:23-cv-01079 (the "WARN Action") alleging that the Tenant violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–2109 (the "WARN Act") when it made a mass layoff on or within 30 days of August 4, 2023 (a time after when the Receiver took control) without the proper notice required by the WARN act by failing to file notice of the facility's closure. A true and correct copy of the WARN Action is attached hereto as Exhibit 4.

26.    With the Voluntary Bankruptcy dismissed, the Receiver recommenced activity in the Receivership Action, and on August 28, 2023, sought authority to make payment to Twain Financial in accordance with the terms of the term sheet attached to the August 3, 2023 Order. *See* Exhibit 5.

27.    On August 31, 2023, the Petitioning Creditors commenced the instant case (this "Case") by filing their involuntary petition, thereby triggering the automatic stay over the Debtor's estate. *Id.*

28.    On that same day, the Petitioning Creditors' counsel provided notice of the involuntary filing (the "Involuntary Notice") to counsel of record in the Receivership Action and the following morning telephonically notified the State Court of the involuntary filing. A true and correct copy of the e-mail notification of the involuntary filing and its attachment is attached hereto as Exhibit 6.

29.    On September 1, 2023, prior to the hearing held on September 1, 2023, by the State Court in the Receivership Action (the "September 1 Hearing"), counsel to the Debtor and the Tenant in the Receivership Action ("Defendant's State Counsel") filed its *Suggestion of Bankruptcy and Notice of Automatic Stay of Proceedings* (the "Bankruptcy Notice") in the Receivership Action, notifying the State Court and all parties in the Receivership Action of the Case and the automatic stay. A true and correct copy of the Bankruptcy Notice is attached hereto as Exhibit 7.

30.    Furthermore, upon information and belief, notwithstanding the Bankruptcy Notice, Receiver's Receivership Counsel advised Defendant's State Counsel that the Receiver intended on continuing with the presentment of its consent motion to modify the August 3, 2023 Order at the September 1 Hearing.

6893964/10/22516.000

31.     Notwithstanding the Involuntary Notice and the Bankruptcy Notice, at the September 1 Hearing, upon information and belief, the State Court and the Violating Parties acknowledged this Case, but the State Court was persuaded by Receiver's Receivership Counsel that the commencement of this Case did not stay the Receivership Action nor the entry of the September 1 State Court Order.

32.     The Petitioning Creditors were not present at the September 1 Hearing, so it is unclear to them whether Twain's Receivership Counsel and AHS' Receivership Counsel played a role in convincing the State Court, but, upon information and belief, Twain's Receivership Counsel and AHS' Receivership Counsel consented to the presented motion and proposed order at the September 1 Hearing.

33.     Nevertheless, on September 1, 2023, upon information and belief, the State Court entered an order (the "September 1 State Court Order") and opined that granting the order "to clarify and confirm that the funds advanced to Twain [Financial] pursuant to the August 3, 2023 Order … shall constitute a superpriority administrative expense claim in favor of Twain [Financial], and Twain [Financial] shall be reimbursed from the first dollars available, prior to Twain [Financial] and AHS being reimbursed *in pari passu* for the funds advanced by Twain [Financial] and AHS previously …" A true and correct copy of September 1 State Court Order (and related consent motion) is attached hereto as Exhibit 8.

34.     Upon information and belief, on September 5, 2023, the Receiver wired Twain Financial $800,000 (the "Post-Petition September 5 Transfer").

35.     At the time of the filing of this Motion, it is unknown to the Petitioning Creditors at this time the purpose of the Post-Petition September 5 Transfer and whether the Receiver has disbursed any additional post-petition funds beyond this transfer.

36.     On September 5, 2023, counsel for the Petitioning Creditors sent a letter of *Notice of Violation of Automatic Stay* (the "September 5, 2023 Letter") to, *inter alia*, the Violating Parties. A true and correct copy of the September 5, 2023 Letter is attached hereto as Exhibit 9.

37.     Furthermore, upon information and belief, the following motions of the Receiver (collectively referred to as the "September 6 Motions") are scheduled to be presented in the Receivership Action on September 6, 2023 (the "September 6 Hearing")[1]:

a.  *Motion for Authority to Reject Vehicle Lease and Return Full Possession of Vehicles to Lessor*;

b.  *Motion for Authority to Sell Vehicles*;

c.  *Motion Establishing Claim Bar Date and Notice Procedures*; and

d.  *Motion to Extend Stay Pursuant to MO. REV. STAT. § 515.575.2.*

38.     Upon information and belief, the Receiver presently intends on proceeding with the presentment of the September 6 Motions at the September 6 Hearing.

## **ARGUMENT**

39.     The automatic stay is a cornerstone protection for debtors under the Bankruptcy Code. *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). "It is well-established that one of the automatic stay's primary purposes is to maintain the status quo between the debtor and [its] creditors, thereby affording the parties and the Bankruptcy Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *In re Denby-Peterson*, 941 F.3d 115, 126 (3d Cir. 2019) (quoting *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999)) (internal quotations omitted).

---

[1]     It is unknown to the Petitioning Creditors at this time if other motions are scheduled to be presented at the September 6 Hearing.

6893964/10/22516.000

40.     Section 362(a) provides, in relevant part, that a petition filed under section 303 operates as a stay of:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> …
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a)(1), (3)-(6).

41.     Typically, upon filing of the bankruptcy petition, a custodian of the debtor's property must deliver the property to the bankruptcy trustee. 11 U.S.C. § 543(b); *Sovereign Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005). A custodian is generally prohibited from administering the property of the debtor after the filing of the bankruptcy petition or take any action except to do what is necessary to preserve the property. 11 U.S.C. § 543(a). Moreover, the custodian must file an accounting. 11 U.S.C. § 543(b)(2); Fed. R. Bankr. P. 6002(a).

42.     A receiver appointed by a state court is clearly a "custodian" within the meaning of section 101. *See* 11 U.S.C. § 101(10) (defining custodian as "[a] receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title."); *In re Cornwall Paper Mills Co.*, 169 B.R. 844, 849 (Bankr. D.N.J. 1994).

43.     While section 543(d) provides that the court may excuse compliance with the turnover provisions of subsections (a)-(c), such excusal *may* be granted "if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue

6893964/10/22516.000

in possession, custody, or control of such property." 11 U.S.C. § 543(d)(1); *Matter of Ofty Corp.*, 44 B.R. 479, 481 (Bankr. D. Del. 1984).

44.     Because section 543 establishes specific rules generally favoring the turnover of assets to the trustee or debtor in possession, the party requesting excusal from turnover bears the burden of establishing that compliance should be excused. *See In re Franklin*, 476 B.R. 545, 551 (Bankr. N.D. Ill. 2012) ("A party seeking to excuse compliance with the requirement under 11 U.S.C. § 543(d) must show by a preponderance of evidence that the best interests of the creditors are served by permitting a custodian to retain control of the estate."); *In re Sabana del Palmar, Inc.*, No. 12-06177 ESL, 2013 WL 2367835, at *5 (Bankr. D.P.R. May 29, 2013) ("[A] party opposing the turnover of property held by a receiver must demonstrate affirmatively how creditors will be better served if the receiver is retained."); *In re Falconridge, LLC*, No. 07-BK-19200, 2007 WL 3332769, at *7 (Bankr. N.D. Ill. Nov. 8, 2007) (citing cases).

45.     Here, the continuation of the Receivership Action undeniably constitutes "the continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case," as contemplated by section 362(a)(1). Additionally, the continued prosecution of the motion resulting in entry of the September 1 State Court Order granting a superpriority administrative expense claim, and the subsequent Post-Petition September 5 Transfer, are violations of section 362(a)(3)-(6). As such, the Receivership Action should have been stayed when the involuntary petition was filed. *See Gilchrist v. Gen. Elec. Cap. Corp.*, 262 F.3d 295, 303 (4th Cir. 2001) ("Under the plain meaning of [section 1334(e), section 362(a)(1), section 105, and Rule 7004 of the Federal Rules of Bankruptcy Procedure], [the receivership] proceedings … were stayed … when the petition in bankruptcy was filed."); *In re Montgomery Ward, LLC*, 292 B.R. 49, 57 (Bankr. D. Del. 2003)

("Once a debtor files for bankruptcy protection and triggers the automatic stay, the stay suspends the authority of any non-bankruptcy court to hear a judicial proceeding against the debtor until the petition is dismissed, closed or the discharge is granted or denied."); *see also Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) ("To avoid interfering with the broad purposes served by the automatic stay, it was necessary for the arbitration proceeding to halt as soon as the scope of the parties' submissions supported an award that could diminish [the debtor's] estate. By continuing beyond this point, the proceeding violated § 362(a)(1), and the panel's deliberations and the resulting award are therefore void.")

46.     There also can be no dispute that the Debtor's currency, leases, and vehicles constitute "property" of the Estate. *See* 11 U.S.C. § 541 (a) (providing that the property of the bankrupt estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."); *Westmoreland Hum. Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001) (noting that the definition of "property of the estate" includes "all kinds of property, including tangible or intangible property").

47.     Although the section refers to an "individual," the Third Circuit Court of Appeals has recognized that this section applies to corporate debtors as well. *See In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990).

48.     A "willful" violation occurs where the defendant (1) knows about the automatic stay, and (2) the defendant's actions that violate the stay are intentional. *Id.* (citing *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989); *see also In re Lansaw*, 853 F.3d 657, 664 n.4 (3d Cir. 2017) (same). Knowledge of the existence of the bankruptcy case is "treated as knowledge of the automatic stay." *In re Theokary*, 444 B.R. 306, 322 (Bankr. E.D. Pa. 2011) (collecting cases).

6893964/10/22516.000

49.     No specific intent requirement exists, and where the action was taken in bad faith, punitive damages may also be awarded. *Atl. Bus. & Cmty.*, 901 F.2d at 329.

50.     "[P]unitive damages are largely left to the discretion of the bankruptcy court." *Lansaw*, 853 F.3d at 670 (internal quotations and citations omitted). "One of the purposes behind punitive damages is to deter future misconduct." *Id.*

51.     Here, the Violating Parties took actions in the Receivership Action with actual knowledge of the bankruptcy filing and intentionally, with the specific intent to ignore, or at a minimum circumvent, the automatic stay. When alerted to the bankruptcy by the Involuntary Notice, upon information and belief, the Violating Parties did not stay the Receivership Action but rather actively participated in it. Their actions leave no doubt that they intended, despite the automatic stay, to move forward with the entering of the September 1 State Court Order without first seeking approval from this Court. Moreover, the Receiver's disbursement of Estate property to Twain Financial on September 5, 2023, without first seeking approval from this Court, is another blatant disregard of the automatic stay. Finally, the intended presentment of the September 6 Motions undoubtedly evidences a continuous intent to disregard the automatic stay by, *inter alia*, selling additional Estate assets (rejecting leases and selling vehicles).

52.     As the continuation of the Receivership Action leading to the entry of the September 1 State Court Order violates the stay, this order should be held as void *ab initio*. *See Raymark Indus., Inc. v. Lai*, 973 F.2d 1125, 1131 (3d Cir. 1992); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991).

53.     Furthermore, as the Violating Parties' violation of the automatic stay was, and continues to be, "willful" as a matter of law, the Petitioning Creditors are entitled to actual damages, including costs and attorney's fees. *See, e.g., In re Daya Medicals, Inc.*, 560 B.R. 855,

863 (Bankr. S.D. Fla. 2016) (granting actual damages, including costs and attorney fees, for receiver's violation of automatic stay to obtain assignment of debtor's estate property despite being notified of the bankruptcy).

54.     Moreover, it is likewise beyond dispute that the Receiver was a "custodian" of the Debtors' property at the time the Case was filed and is thus subject to the provisions of section 543. *See* 11 U.S.C. §§ 101, 543.

55.     Yet, the Receiver directly contravened his statutory duty under section 543(a) by moving forward with the Receivership Action with actual knowledge of the pending bankruptcy and disbursing Estate funds to Twain Financial. It is without question that seeking an order authorizing a significant superpriority administrative expense claim, and disbursing a momentous amount of Estate funds, to *one* of the Debtor's creditors, represent the exact opposite of preserving property – it is point blank dissipation.

56.     Therefore, because: (i) the Violating Parties have not acted in good faith; (ii) the Receiver refuses to comply with his statutory duties under section 543; and (iii) awarding punitive damages is evidently necessary to deter the Violating Parties from continued stay violations or further dissipation of Estate assets, this Court should award the Petitioning Creditors punitive damages in this case.

## **RESERVATION OF RIGHTS**

Given the limited timeframe available to bring this emergency motion as quickly as possible before this Court to prevent the callous disregard of the automatic stay and further dismantling of the Estate, the Petitioning Creditors' investigation into the facts are still ongoing,

6893964/10/22516.000

and, as such, the Petitioning Creditors expressly reserve all rights to supplement or amend this motion with additional facts, supporting authority, and exhibits, as necessary.

<u>CONCLUSION</u>

**WHEREFORE**, the Petitioning Creditors respectfully pray for this Court to enter an order: (i) enforcing the automatic stay against the Violating Parties and preventing any further prosecution of the Receivership Action or other violations of the automatic stay without further order of this Court; (ii) determining that certain, or all, of the Violating Parties have committed acts that constitute a willful violation of the automatic stay; (iii) holding that the September 1 State Court Order is void *ab initio*; (iv) awarding the Petitioning Creditors actual damages, including expenses and attorney fees, and punitive damages; and (v) granting any additional and further relief as this Court deems just and equitable.

Dated:  September 6, 2023

*/s/ Eric M. Sutty*
Eric M. Sutty (No. 4007)
**ARMSTRONG TEASDALE LLP**
1007 North Market Street
Wilmington, DE 19801
Telephone: (302) 416-9671
Email: esutty@atllp.com

and

Aaron L. Hammer (IL #6243069)
*Admitted Pro Hac Vice*
Nathan E. Delman (IL #6296205)
*Admitted Pro Hac Vice*
**HORWOOD MARCUS & BERK
CHARTERED**
500 West Madison, Suite 3700
Chicago, IL 60661
Telephone: (312) 606-3200
Email: ahammer@hmblaw.com

***Counsel to the Petitioning Creditors***