## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SA Hospital Acquisition Group, LLC, | Case No. 23-11367 (BLS) |
| Debtor. | **Re: Docket No. 22** |

### PETITIONING CREDITORS'
### RESPONSE TO MOTION TO DISMISS OR TO ABSTAIN

Goldberg Healthcare Partners, LLC, Fariborz Saidara, Matthew Haddad, and Yoel Pesso (collectively, the "Petitioning Creditors"), by and through the undersigned counsel, hereby file their response (this "Response") to the *Motion to Dismiss or to Abstain* (the "Motion") of MorrisAnderson & Associates, Ltd. (the "Receiver") [Dkt. No. 22], and hereby request the entry of an order: (i) denying the Motion for lack of proper notice; (ii) denying the Motion for lack of standing; or (iii) declining to dismiss or to abstain; and (iv) granting any additional and further relief as this Court deems just and equitable. In support thereof, the Petitioning Creditors respectfully state as follows:

### PRELIMINARY STATEMENT

1.      The prime maxim of federal bankruptcy law is ensuring equal distribution among all creditors to provide a *pro rata* distribution of a debtor's property, rivaled perhaps by the core principle of providing an honest – but unfortunate – debtor with a breathing spell to reorganize.

2.      Under section 305, both abstention and dismissal are "extraordinary" remedies, and dismissal should only be granted with "extreme caution." Here, the Receiver: (a) fails to demonstrate his standing to bring this Motion; and furthermore (b) fails to meet the high burden

1

of showing that the interests of both the Debtor and its creditors would be better served from either abstention or dismissal (they would not).

3. The instant bankruptcy case is the ***only*** avenue of relief to the majority of the Debtor's creditors, who stand to lose any possibility of recovery in the state receivership action, as well as the ***only*** hope for a potential reorganization for the Debtor and the reopening of the South City Hospital, which was the sole hospital serving all of south St. Louis.[1] Accordingly, and for the reasons set forth below, this Court should: (a) dismiss the Motion for lack of standing; or (b) decline to dismiss or abstain.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. Pursuant to Local Rule 9013-1(f), if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution, the Petitioning Creditors consent to the entry of a final order in connection with this Motion.

## BACKGROUND

6. SA Hospital Acquisition Group, LLC (the "Debtor") is a guarantor of debt incurred by SA Hospital Real Estate Holdings, LLC ("SAH Real Estate").

---

[1] Justina Coronel, *'It'll be a blow' | South City Hospital, formerly St. Alexius, closing its doors after years of financial troubles*, KSDK, August 4, 2023, at pg. 2, https://www.ksdk.com/article/news/local/south-city-hospital-closing-financial-troubles/63-92658092-0e78-4b1f-9fc5-cfaeedadcb73 (quoting ward alderman Shane Cohn's statement that "[t]his is the only hospital outside of the central corridor. This is the only emergency room in southeast of the city and it's another emergency room that's closing. The emergency rooms at other facilities are already overcrowding.").

6902283/2/22516.000

7.     The Petitioning Creditors are creditors of the Debtor, collectively holding at least $3,770,000 in undisputed claims against the Debtor. *See* [Dkt. No. 1]. Attached as <u>Exhibit 1</u> are supporting documents evidencing each of the Petitioning Creditors' claims against the Debtor.

8.     On January 19, 2021, the Debtor acquired the facility formerly known as St. Alexius Hospital, now known as South City Hospital ("<u>South City Hospital</u>"), located in the City of St. Louis, Missouri, from a section 363 sale in the *In re Americore Holdings, LLC* bankruptcy. *See In re Americore Holdings, LLC*, Eastern District of Kentucky, Bankr. Case No. 19-61608, [Dkt. No. 1002] (notice of closing stating that the sale closed on January 19, 2021).[2]

9.     Upon information and belief,[3] around December of 2021, SAH Real Estate and Twain GL XXV, LLC "(<u>Twain GL</u>"), the fee owner of the land underlying South City Hospital, entered into a lease (the "<u>Twain Lease</u>"). SAH Real Estate is the tenant of the Twain Lease, and the Debtor entered into a sublease with SAH Real Estate.

10.     Around May 2022, the Debtor and American Healthcare System ("<u>AHS</u>") entered into an asset purchase agreement (the "<u>APA</u>") whereby AHS agreed to purchase substantially all of the South City Hospital's assets. At that time, the Debtor and AHS also entered into an interim management agreement (the "<u>IMA</u>," and together with the APA, the "<u>AHS Agreements</u>") whereby the Debtor transferred the direction and control of the operations of South City Hospital to AHS beginning in May of 2022.

11.     AHS (who had total control of South City Hospital's financial operations) committed several material breaches of the AHS Agreements terms, including, *inter alia*: (a) the

---

[2] The Motion, however, alleges the South City Hospital was acquired in 2020. Motion, at ¶ 4; Wiggins Decl. at ¶ 4.

[3] Due to the time constraints presented by the expedited briefing schedule, the Petitioning Creditors had no opportunity to conduct formal discovery, or obtain and analyze the multitude of documents (including the AHS Agreements) which likely support the facts stated herein. Accordingly, unless stated otherwise, the factual assertions herein are presented on a good faith information and belief basis, and the Petitioning Creditors reserve all rights to modify these statements as their understanding of the facts develop.

6902283/2/22516.000

failure to make the lease payments due under the Twain Lease; (b) the failure to pay other financial obligations of the Debtor, including equipment lenders and employee health benefits; and (c) the siphoning of millions of dollars, belonging to South City Hospital, out of South City Hospital's bank accounts for AHS' personal use.

12.     The Debtor attempted to workout a deal with Twain GL and AHS by providing a proposed buyer of South City Hospital – to which Twain GL and AHS refused.

13.     On May 15, 2023, Twain GL commenced litigation against both the Debtor and the SAH Real Estate in the Circuit Court of the City of St. Louis, Missouri (the "State Court"), seeking an emergency appointment of a state court receiver of the Debtor and SAH Real Estate, their property, and their operations. This case was assigned Case No. 2322-CC00960 (the "Receivership Action").

14.     Prior to the Receivership Action, Twain GL and AHS were unsecured creditors of the Debtor.

15.     On May 25, 2023, the State Court appointed the Receiver as receiver of the Debtor and SAH Real Estate, their operations, and their assets (the "Receiver Order"). A true and correct copy of the Receiver Order is attached hereto as Exhibit 2.

16.     On May 31, 2023, the Receiver filed its bond and took its position as general receiver over the Debtor and SAH Real Estate.

17.     Although the Receiver's Motion indicates that certain employee benefits were terminated prior to the Receiver's appointment (*see* Motion at ¶11(i)), on June 12, 2023, when the Receiver was already in place, the Debtor's employees received correspondence that employee benefits including health insurance, retirement plans, and workers compensation coverage were

4

terminated. Attached as <u>Exhibit 3</u> is a letter which purports to be a true and accurate copy of this notification.

18.     On June 14, 2023, the State Court entered a financing order permitting the Receiver to obtain secured financing from AHS to provide financing to the Receiver of up to $2 million every four weeks, to fund hospital operations. A true and correct copy of the State Court docket is attached hereto as <u>Exhibit 4</u>.

19.     On June 21, 2023, the State Court entered a second financing order permitting the Receiver to obtain secured financing from Twain Financial Partners LLC ("<u>Twain Financial</u>," and together with Twain GL, "<u>Twain</u>") of up to $2 million every four weeks, to fund hospital operations. *See id.*

20.     On August 3, 2023, the State Court entered a third financing order (the "<u>August 3, 2023 Order</u>") permitting the Receiver to obtain secured financing from Twain Financial to provide financing to the Receiver of up to $2 million. A true and correct copy of the August 3, 2023 Order is attached hereto as <u>Exhibit 5</u>.

21.     The August 3, 2023 Order confirmed Twain Financial's funding would be used only for limited purposes, as needed to: (1) collect accounts receivable and liquidate other assets of the receivership estate; (2) take necessary precautions for the movement and safety of hospital patients; and (3) cover certain fees and out of pocket expenses incurred by the Receiver and its attorneys going forward. *See id.*

22.     The August 3, 2023 Order granted Twain Financial a first priority lien and a second-priority lien on certain "Receivership Property" (as defined in the Receiver Order) which was deemed perfected without further filing or notices. *See id.*

23.     On August 11, 2023, Jeffrey Ahlholm and Lawrence E. Feigen, purportedly as co-managing members of the Debtor, filed a voluntary chapter 11 petition in the U.S. Bankruptcy Court for the Central District of California (the "<u>California Bankruptcy Court</u>"), and this case was assigned Case No. 9:23-bk-1690-RD (the "<u>Voluntary Bankruptcy</u>").

24.     On August 15, 2023, Twain GL sought dismissal of the Voluntary Bankruptcy on the grounds that, pursuant to the Receiver Order, the Receiver was vested with the sole authority to commence a voluntary bankruptcy on the Debtor's behalf. *See* Voluntary Bankruptcy, [Dkt. No. 5].

25.     On August 21, 2023, the California Bankruptcy Court granted Twain GL's motion to dismiss, thereby terminating the Voluntary Bankruptcy. *See* Voluntary Bankruptcy, [Dkt. No. 26].

26.     On August 25, 2023, former employees of the shuttered South City Hospital (the "<u>WARN Claimants</u>") initiated a proposed class-action lawsuit in the United States District Court for the Eastern District of Missouri, assigned as case number 4:23-cv-01079 (the "<u>WARN Action</u>"), alleging that the Debtor violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–2109 (the "<u>WARN Act</u>") when it effectuated a mass layoff on or within 30 days of August 4, 2023 (at a time where the Receiver was in control) without proper notice as required by the WARN Act by failing to file notice of the facility's closure. A true and correct copy of the WARN Action is attached hereto as <u>Exhibit 6</u>.

27.     With the Voluntary Bankruptcy dismissed, the Receiver recommenced activity in the Receivership Action, and on August 28, 2023, sought authority to make payment to Twain Financial in accordance with the terms of the term sheet attached to the August 3, 2023 Order. *See* <u>Exhibit 7</u>.

6902283/2/22516.000

28.     On August 31, 2023, the Petitioning Creditors commenced the instant case (this "Case") by filing their involuntary petition, thereby triggering the automatic stay over the Debtor's estate. *Id.*

29.     On that same day, the Petitioning Creditors' counsel provided notice of the involuntary filing (the "Involuntary Notice") to counsel of record in the Receivership Action and the following morning telephonically notified the State Court of the involuntary filing. A true and correct copy of the e-mail notification of the involuntary filing and its attachment is attached hereto as Exhibit 8.

30.     On September 1, 2023, prior to the hearing held on September 1, 2023, by the State Court in the Receivership Action (the "September 1 Hearing"), state counsel in the Receivership Action to the Debtor and SAH Real Estate filed its *Suggestion of Bankruptcy and Notice of Automatic Stay of Proceedings* (the "Bankruptcy Notice") with the State Court, notifying the State Court and all parties in the Receivership Action of the Case and the automatic stay. A true and correct copy of the Bankruptcy Notice is attached hereto as Exhibit 9.

31.     Notwithstanding the Involuntary Notice and the Bankruptcy Notice, at the September 1 Hearing, upon information and belief, the State Court, AHS, Twain GL, and the Receiver acknowledged this Case, but the State Court was persuaded by the Receiver that the commencement of this Case did not stay the Receivership Action nor the entry of the September 1 State Court Order.

32.     The Petitioning Creditors were not present at the September 1 Hearing, so it is unclear to them whether Twain and AHS played a role in convincing the State Court, but, upon information and belief, Twain and AHS consented to the presented motion and proposed order at the September 1 Hearing.

7

33. On September 1, 2023, the State Court entered an order (the "September 1 State Court Order") and opined that granting the order "to clarify and confirm that the funds advanced to Twain [Financial] pursuant to the August 3, 2023 Order … shall constitute a superpriority administrative expense claim in favor of Twain [Financial], and Twain [Financial] shall be reimbursed from the first dollars available, prior to Twain [Financial] and AHS being reimbursed *in pari passu* for the funds advanced by Twain [Financial] and AHS previously …" A true and correct copy of September 1 State Court Order (and related consent motion) is attached hereto as Exhibit 10.

34. On September 5, 2023, the Receiver wired Twain Financial $800,000 (the "Post-Petition September 5 Transfer") on behalf of the post-receivership revolving line of credit authorized by a post-petition order entered in the Receivership Action after the Involuntary Petition, while the automatic stay was in effect. *See* [Dkt. No. 30 at ¶¶ 13 & 35].

35. On September 5, 2023, counsel for the Petitioning Creditors provided *Notice of Violation of Automatic Stay* (the "September 5, 2023 Letter") to, *inter alia*, the Receiver, Twain, and AHS. A true and correct copy of the September 5, 2023 Letter is attached hereto as Exhibit 11.

36. On September 6, 2023, the Petitioning Creditors filed its *Emergency Motion to Enforce the Automatic Stay*. [Dkt. No. 11].

37. On September 11, 2023, the Receiver filed the present Motion.

## LACK OF PROPER NOTICE

38. The Motion is deficient on its face for lack of proper notice to all creditors. Rule 1017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)") provides that:

> A case shall not be dismissed on motion of the petitioner, for want of prosecution or other cause, or by consent of the parties, before a hearing on notice as provided in Rule 2002.

> For the purpose of the notice, the debtor shall file a list of creditors with their addresses within the time fixed by the court unless the list was previously filed. If the debtor fails to file the list, the court may order the debtor or another entity to prepare and file it.

Fed. R. Bankr. P. 1017(a).

39.     "This subdivision implements §§303(j), 707, 1112 and 1307 of the Code by specifying the manner of and persons to whom notice shall be given and requiring the court to hold a hearing on the issue of dismissal." Fed. R. Bankr. P. 1017 (advisory committee's note). As stated in the advisory notes, "the rule applies to voluntary and involuntary cases." *Id.*

40.     Rule 2002 of the Federal Rules of Civil Procedure (the "Federal Rule(s)") states, in relevant part, "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of … a chapter 11 reorganization case … the hearing on the dismissal of the case[.]" Fed. R. Civ. P. 2002(a)(4).

41.     "Bankruptcy Rules 1017 and 2002(a) apply during the 'gap period' between the filing of the involuntary petition and Court's order for relief, not solely after the order for relief has been granted." *In re Eletson Holdings Inc.*, 651 B.R. 334, 337 (Bankr. S.D.N.Y. 2023).

42.     "Multiple courts have applied Bankruptcy Rule 1017(a) to motions to dismiss pursuant to 11 U.S.C. § 303(b)." *Id.*; *Efron v. Gutierrez*, 226 B.R. 305, 318 (D.P.R. 1998) (applying Rule 2002(a)(4) notice requirements to motion to dismiss filed by the debtor in an involuntary petition); *see also, e.g., Wynne v. Rochelle*, 385 F.2d 789, 795 (5th Cir. 1967) (discussing importance of notice prior to dismissing involuntary petition due to concern for the preservation of the estate and in the interests of creditors not party to the petition).

43.     Here, if the Receiver had a genuine interest in the best result for all creditors, it would have served its Motion on all creditors, as this Motion to dismiss or abstain directly affects

their rights. But the certificate of service demonstrates that service was only made to Twain, AHS, and the Petitioning Creditors.

44.     The Petitioning Creditors understand notice may be shortened pursuant to Bankruptcy Rule 9006 and acknowledge this Motion is being heard on an expedited basis. However, the Petitioning Creditors have significant concerns regarding the Receiver's lack of notice of this Motion to other creditors of the estate who would be deprived of due process and prejudiced if the bankruptcy is dismissed.

## **ARGUMENT**

### I.     **The Receiver Has Not Demonstrated Standing to Seek Dismissal, Abstention, or to Contest the Involuntary Petition Under Sections 303 and 305**

45.     The Motion seeks dismissal or abstention, under sections 305 and 305 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), of the Involuntary Petition as in the best interests of the Debtor and its creditors, and it contests the validity of the Involuntary Petition by questioning whether the Petitioning Creditors are eligible petitioning creditors who have brought the Involuntary Petition in good faith.

46.     Ironically, the Receiver raises the issue of standing when the Receiver itself has failed to sufficiently demonstrate it has the requisite standing to seek the relief sought in the Motion. As explained *infra*, the Receiver presently lacks standing to seek dismissal, abstention, or to even contest the Involuntary Petition. Furthermore, it is unlikely that the Receiver will ever have standing at a future date.

47.     Section 303(d) provides that "[t]he debtor, or a general partner in a partnership debtor that did not join in the petition, may file an answer to a petition under this section." 11 U.S.C. § 303(d).

10

48.     Likewise, Bankruptcy Rule 1011(a) provides, in relevant part, that the "debtor named in an involuntary petition may contest the petition." *See* Fed. R. Bankr. P. 1011(a).

49.     Under the Bankruptcy Code, receivers appointed by a state court are "custodians" within the meaning of section 101. See 11 U.S.C. § 101(10) (defining custodian as "[a] receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title."); *In re Cornwall Paper Mills Co.*, 169 B.R. 844, 849 (Bankr. D.N.J. 1994).

50.     Under section 543, the Bankruptcy Code draws a clear distinction between a custodian (like a state court receiver) and a debtor upon the filing of a bankruptcy petition. *See* 11 U.S.C. § 543(a) (stating that a custodian is generally prohibited from administering the property of the debtor after the filing of the bankruptcy petition or take any action except to do what is necessary to preserve the property; *see also* 11 U.S.C. § 543(b) (stating that upon filing of the bankruptcy petition, a custodian of the debtor's property *shall*, among other statutory prescribed duties, deliver the property of the estate to the bankruptcy trustee) (emphasis added).

51.     A long line of cases holds that non-statutory parties have **_no_** absolute right to seek dismissal or to file an answer or response to an involuntary petition. *In re QDN, LLC*, 363 F. App'x 873, 875 (3d Cir. 2010) (creditors do not have standing to contest an involuntary petition); *In re Earl's Tire Serv., Inc.*, 6 B.R. 1019, 1021 (D. Del. 1980) (same); *In re Royal Gate Assocs., Ltd.*, 81 B.R. 165, 167 (Bankr. M.D. Ga. 1988) (same); *In re Nat'l Republic Co.*, 109 F.2d 167, 170 (7th Cir. 1940) (under the predecessor of the Bankruptcy Code, state court receivers had no absolute right to contest an involuntary petition, but may do so upon a "proper showing"); *Globe Paper Co. v. Morris Travis Drug Co.*, 112 F.2d 350, 352 (6th Cir. 1940) ("The bankruptcy court has discretion as to whether it should permit intervention by the receiver[.]").

6902283/2/22516.000

52.     The case law on this subject demonstrates that bankruptcy courts across the country have only permitted state court receivers to intervene and file a motion to dismiss under section 303 *only where the debtor failed to respond by the answer deadline*. *See In re 318 Retail, LLC*, 640 B.R. 407, 411 (Bankr. N.D. Ill. 2022) (stating that "given the debtor's failure to respond, the [r]eceiver may file motions to intervene or to dismiss"); *In re Skybridge Spectrum Found.*, No. 21-BK-5-ELG, 2023 WL 5561105, at *3 (D.D.C. Aug. 29, 2023) (same).

53.     With respect to whether state court receivers may respond to or contest an involuntary petition, certain bankruptcy courts have permitted so *only where the debtor did not respond by the answer deadline or where the debtor joined in the receiver's arguments*. *See In re A & B Liquidating, Inc.*, 18 B.R. 922, 925 (Bankr. E.D. Va. 1982) ("This [c]ourt concludes that absent the filing of an answer by the [d]ebtor, the assignee for the benefit of creditors has standing to file an answer."); *In re Sun World Broadcasters, Inc.*, 5 B.R. 719, 721 (Bankr. M.D. Fla. 1980) (stating in *dicta* that the court was inclined to agree that the receiver could respond, but declined to rule on whether the receiver lacked standing where the debtor corporation had responded to the petition and joined in the receiver's arguments).

54.     The most recent cases to tackle this issue have held that receivers lack the requisite standing to contest the involuntary petition *altogether*, regardless of whether the debtor failed to respond by the answer deadline. *See, e.g., 318 Retail*, 640 B.R. at 411 (given the debtor's failure to respond, the [r]eceiver may file motions to intervene or to dismiss … [but] [t]he [r]eceiver will not be allowed to answer or contest the [i]nvoluntary [p]etition because [section] 303(d) and [Bankruptcy Rule] 1011(a) allow debtors and non-petitioning general partners only to do so."); *Skybridge Spectrum*, No. 21-BK-5-ELG, 2023 WL 5561105, at *3 (citing of same).

55.     Accordingly, since neither the Code nor the Rules explicitly provide for any participation by a custodian in involuntary proceedings, as a non-statutory party, here the Receiver has the burden of demonstrating that it has standing: (a) to intervene and seek dismissal or abstention; and (b) to answer or contest the involuntary petition. The Receiver cannot presently make this demonstration.

56.     The Receiver cites a singular case, *In re Starlite Houseboats, Inc.*, 426 B.R. 375, 381 (Bankr. D. Kan. 2010) for the proposition that "[t]he Receiver is the proper party to answer and respond to the Involuntary Petition in this case." Motion, at ¶ 8.

57.     However, a proper reading of the *Starlite Houseboats* opinion, and its underlying citation, demonstrates that *Starlite Houseboats* is distinguishable from the facts of the present case. In *Starlite Houseboats*, the bankruptcy court cited *Sun World Broadcasters* for its holding that the state court receiver was the proper party to answer the involuntary petition. 426 B.R. at 381. However, in *Sun World Broadcasters*, the bankruptcy court (while stating in *dicta* that it was inclined to agree with the receiver's position that he was the only party with standing to act on behalf of the *cooperating* debtor) explicitly declined to rule on standing given that "*any defect or lack of standing has been cured by the debtor corporation's responding to the petition and joining in the receiver's arguments*." 5 B.R. at 721 (emphasis added).

58.     In contrast to *Sun World Broadcasters*, a review of the *Starlite Houseboats* case's court docket reflect that the Starlite Houseboats debtor did *not* join in the receiver's arguments. *See In re Starlite Houseboats, Inc.*, District of Kansas, Bankr. Case No. 09-24200. In fact, the debtor failed to file an answer altogether. *Id.*

59.     In conclusion, *Sun World Broadcasters* does not support the *Starlite Houseboats* holding, but *Starlite Houseboats* agrees with the line of cases where bankruptcy courts hold that

13

receivers have standing to contest the involuntary petition where the debtor failed to respond by the answer deadline.

60. The facts of *Starlite Houseboats* and *Sun World Broadcasters* are distinguishable from the present case. Here, the Petitioning Creditors filed the Involuntary Petition on August 31, 2023, and the summons of the Involuntary Petition was served by mail on the same date. [Dkt. Nos. 1 & 4].

61. Accordingly, September 25, 2023 is the deadline (the "Involuntary Petition Response Deadline") for a response to the Involuntary Petition pursuant to Bankruptcy Rules 1011 and 9006. *See* Fed. R. Bankr. P. 1011(b) ("Defenses and objections to the petition shall be presented in the manner prescribed by Rule 12 F.R.Civ.P. and shall be filed and served within 21 days after service of the summons[.]"); Fed. R. Bankr. P. 9006(a), (f) (adding three days to the prescribed period due to service by mail, and an extra day if the last day of the period falls on a weekend).

62. Because the Involuntary Petition Response Deadline has not yet passed, as explained *supra*, the Receiver has no standing to seek dismissal or abstention at all. *See 318 Retail*, 640 B.R. at 411; *see also Skybridge Spectrum*, No. 21-BK-5-ELG, 2023 WL 5561105, at *3. Furthermore, as a non-statutory party, the Receiver lacks standing altogether to contest the validity of the Involuntary Petition. *See 318 Retail*, 640 B.R. at 411.

63. Even if this Court is inclined to agree with the line of cases where bankruptcy courts have allowed state court receivers to contest an involuntary petition where the debtor fails to respond by the answer deadline or where a cooperative debtor joins in the receiver's arguments,[4]

---

[4] *See A & B Liquidating*, 18 B.R. at 925; *Starlite Houseboats*, 426 B.R. at 381; *Sun World Broadcasters*, 5 B.R. at 721.

6902283/2/22516.000

here, the Involuntary Petition Response Deadline has not yet passed and, upon information and belief (most pointedly the fact that the Debtor initiated the Voluntary Bankruptcy), the Debtor may likely file a consent to the entry of an order for relief.

64.    Accordingly, the Receiver lacks standing to seek dismissal, abstention, or to contest the validity of the Involuntary Petition. As such, this Court should dismiss the Motion.

## II.    Even if Standing Is Met, the Receiver Fails to Demonstrate Dismissal or Abstention Is in the Best Interests of Creditors or the Debtor

65.    The Motion seeks to have this Court dismiss or abstain from this Case and allow the Receiver to continue its pursuit of the Receivership Action. To that end, the Motion contains several misleading statements and material omissions regarding the history of the Debtor, the events and structure of the Receivership Action, and the viability of a potential reorganization in bankruptcy.

66.    As demonstrated herein, dismissal or abstention is not in the best interests of the Debtor or its creditors (with the exception of Twain, AHS, and the Receiver). Neither the Debtor, the majority of its creditors, nor the overall St. Louis community (now lacking accessible, affordable healthcare with the closure of the South City Hospital) would be well-served by a continuation of the Receivership Action – which by the Receiver's own admittance would be a full liquidation process.[56]

67.    Section 305(a) states, in pertinent part: "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time

---

[5] *See* Motion, at ¶ 34 (stating the court should dismiss or abstain "to permit the Receiver to continue the process of liquidation of the assets").

[6] Cori Bush, *Congresswoman Bush Statement on Closure of South City Hospital*, August 10, 2023, https://bush.house.gov/media/press-releases/congresswoman-bush-statement-on-closure-of-south-city-hospital ("As a nurse and former employee, I saw firsthand how the hospital served as a healthcare safety net for our community - especially for patients who were uninsured, underinsured, or unhoused. South City Hospital was a model of what health care should and could be universally – quality healthcare that is both affordable and accessible.").

if ... the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).

68.    "The courts that have construed § 305(a)(1) are in general agreement that abstention in a properly filed bankruptcy case is an extraordinary remedy[.]" *In re AMC Invs., LLC*, 406 B.R. 478, 487–88 (Bankr. D. Del. 2009) (citing *In re Eastman*, 188 B.R. 621, 624 (9th Cir. BAP 1995)); *see also In re Crown Vill. Farm, LLC*, 415 B.R. 86, 95 (Bankr. D. Del. 2009) (stating that "abstention is only appropriate in a few carefully defined situations.... [i]t remains the exception, not the rule .... It is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.... Therefore, abstention rarely should be invoked.") (internal quotations omitted) (citing *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992)).

69.    Dismissal under section 305(a) is an even more extraordinary remedy only to be granted "with extreme caution." *See In re DGE Corp.*, No. 05 60608, 2006 WL 4452846, at *3 (Bankr. D.N.J. Feb. 6, 2006) (explaining that "[c]ourts often decline to dismiss a case under § 305(a) because § 305(c) provides that an order either dismissing the case or denying a request for dismissal is not reviewable by appeal); *see also In re O'Neil Vill. Pers. Care Corp.*, 88 B.R. 76, 80 (Bankr. W.D. Pa. 1988) ("As § 305(c) provides that an [o]rder under this section is not reviewable by appeal or otherwise, courts generally, and this Court specifically, only grant this type [of] relief in an egregious situation.").

70.    "Granting an abstention motion pursuant to § 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of ***both*** the debtor and its creditors must be served by granting the requested relief." *In re Northshore Mainland Servs., Inc.*, 537 B.R. 192, 203 (Bankr. D. Del. 2015) (quoting *AMC Invs.*, 406 B.R. at 488) (emphasis added).

16

71.     "While all factors are considered, not all are given equal weight in every case." *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 465 (Bankr. S.D.N.Y. 2008).

72.     Notably, ***the Receiver bears the burden to prove*** the interests of the debtor and its creditors would benefit from dismissal or suspension of proceedings under § 305(a)(1). *AMC Invs.*, 406 B.R. at 488 (citing *Monitor Single Lift*, 381 B.R. at 462–63); *see also In re Acis Cap. Mgmt., L.P.*, 584 B.R. 115, 145 (Bankr. N.D. Tex. 2018) (same); *In re Betteroads Asphalt, LLC*, 594 B.R. 516, 561 (Bankr. D.P.R. 2018) (same); *In re Naartjie Custom Kids, Inc.*, 534 B.R. 416, 425 (Bankr. D. Utah 2015) (same).

73.     The Receiver cannot meet this burden. A continuation of the Receivership Action benefits *solely post-receivership claimants* such as the Receiver, Twain Financial, and AHS.

74.     The Motion neglects to outright state this undisputable fact. Despite its twenty-two (22) page length, while containing references to financing provided for by Twain Financial during the pendency of the Receivership Action, the Motion contains *no* reference to the granting of various first priority liens, second priority liens, and superpriority administrative expense claims to Twain Financial and AHS. *See* Exhibits 2-3, & 8.

75.     At most, the Motion contains one reference to the Missouri Commercial Receivership Act's (R.S.Mo. § 515.500 et seq.) (the "Missouri Receivership Act") section 515.625, which denotes the "hierarchy of claims for distribution [under the Missouri Receivership Act], akin to the priority scheme provided in the Bankruptcy Code." *See* Motion, at ¶ 41. As cited in the footnote, section 515.625 provides that certain post-receivership claims, such as professional fees, the Receiver's claims, and the aforementioned financing-related liens and superpriority administrative expense claims enjoy higher priority.

17

76.     As admitted by Receiver's counsel to one of the Petitioning Creditors during the pendency of the Receivership Action, the Receivership Action would likely result in recovery ***only*** to post-receivership claimants and provide ***no*** payment to any pre-receivership claims. *See* <u>Exhibit 12</u>. Unsurprisingly, the Motion contains no reference of this material statement.

77.     As noted in the Motion, Third Circuit courts consider the following non-exclusive, overlapping, factors to gauge the overall best interests of the debtor and creditors when determining whether 305(a) abstention or dismissal is appropriate:

> (1) the economy and efficiency of administration;
> (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;
> (3) whether federal proceedings are necessary to reach a just and equitable solution;
> (4) whether there is an alternative means of achieving an equitable distribution of assets;
> (5) whether the debtor and creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
> (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
> (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re EHT US1, Inc.*, 630 B.R. 410, 433–34 (Bankr. D. Del. 2021).

## A. Economy and Efficiency of Administration Weigh Against Dismissal or Abstention

78.     With respect to the economy of administration factor, this factor weighs against dismissal or abstention where a receivership has been pending for only a short period of time. *Compare In re Orchards Vill. Invs.*, LLC, 405 B.R. 341, 352 (Bankr. D. Or. 2009) (denying dismissal where a receivership was pending for approximately eight months) *with In re Michael S. Starbuck, Inc.*, 14 B.R. 134, 135 (Bankr. S.D.N.Y. 1981) (dismissing involuntary petition where a receivership had been operating for approximately fourteen months).

79.     Furthermore, bankruptcy courts have denied motions to dismiss or abstain in cases where, as in this Case, a state court receivership is poised to effectuate a short sale of assets which

18

will pay only a select few creditors. *See, e.g.*, *Orchard Vill.*, 405 B.R. at 352. In *Orchard Vill.*, that debtor entered into an agreement with a bank to fund the construction of Orchards Village, a senior living community. *Id.* at 344. When the debtor was unable to repay its loan obligations to the bank, the bank filed an action against the Debtor, and the state court appointed a general receiver for the debtor. *Id.* When the bank initiated efforts to sell Orchards Village, the Orchards Village's equity investors became concerned that a sale would be approved in the receivership that would pay the secured debt in full – but leave a shortfall to unsecured creditors and pay nothing to equity holders. *Id.* at 345. Because of these concerns, the debtor eventually filed for chapter 11 relief, and the receiver moved to dismiss the petition. *Id.*

80.     In ruling on the motion to dismiss, the *Orchard Vill.* court stated, with respect to the economy of judication factor:

> Focusing on economy of administration, the Receiver and the Bank note that the receivership has been in place [for approximately eight months], and the Washington receivership statutes provide a mechanism for the equitable distribution of Orchards Village assets outside of bankruptcy. If the Debtor's chapter 11 case continues, the administration of the Debtor's affairs will be in the hands of two courts, necessarily entailing some duplication of work and increased expenses of administration. Regency has improved operations and occupancy at Orchards Village under the supervision of the Receiver, and the Receiver and the Bank are concerned that the Debtor's bankruptcy filing could destabilize operations at Orchards Village and upset residents and staff.
>
> The Receiver has expressed the belief that the Debtor's chapter 11 filing was strategically designed "to slow down the Receiver's efforts to liquidate the assets, which the Receiver is required to do" under the Appointment Order. That belief is supported by the record.
>
> …
>
> The Debtor's concerns about recoveries for unsecured creditors and equity holders in a "quick sale" scenario are underlined in a letter dated February 6, 2009 from the Receiver to the Bank[.]
>
> …
>
> Despite the note of optimism in the last sentence quoted above, Mr. Richard Hooper, the President of the Receiver, testified at the Hearing that he has refused offers to sell Orchards

Village for the amount of total secured debt or less and is looking forward to the appointment of a broker in the receivership who could bring in 15–20 additional parties that might be interested in buying the facility or investing in Orchards Village. He mentioned nothing about any viable offers to purchase Orchards Village for any amount in excess of secured debt.

*In these circumstances, while a relatively rapid sale in the receivership may benefit secured creditors, from the record before me, it appears that such a sale would leave unsecured creditors with a shortfall and equity holders with nothing*. What the Debtor wants through the chapter 11 process is the opportunity to propose a plan, on a timetable less rapid than a receivership sale, with potentially three components: 1) possible sale of Orchards Village; 2) possibly obtaining take-out financing to satisfy all secured claims against Orchards Village; and/or 3) a reorganization of Orchards Village affairs that provides for satisfaction or payment over time of all Orchards Village claims, including residents' entrance fee deposits.

Based on the record of management of Orchards Village by Farmington under the Management Agreement and OVP Lease prior to the receivership, *I find the prospects for a reorganization along the lines of item 3 above dubious, but in light of the sale and financing situation reflected in the Receiver's own analysis, as discussed above, I conclude that it is in the best interests of the Debtor to give the Debtor an opportunity to propose and attempt to confirm a plan in chapter 11.* Accordingly, I will deny the Motion to Dismiss under § 305(a) as not in the interests of creditors and the Debtor, and I do not find "cause" to dismiss under § 1112(b) at this time.

*Id.* at 351–53 (internal citations omitted) (emphasis added).

81.     The facts in *Orchard Vill.* are highly analogous to the present case's facts, making an analysis of *Orchard Vill.* instrumental. Here, as stated in its Motion, the Receiver is prepared to auction the Debtor's equipment for a quick sale, potentially for far below market value, rendering diminishing any recovery for the lower priority creditors – as well as eviscerating any potential that this vital hospital could be restarted not just for the benefit of creditors, but also for the surrounding community.

82.     Furthermore, the Debtor should be afforded an opportunity to propose and attempt a reorganization and pursue opportunities with potential purchasers. Even if the Debtor's reorganization is "dubious" (it is not), the Debtor is entitled to the benefit of the doubt here given

20

that a continuation of the Receivership Action would lead to payment only for post-receivership claims and would leave nothing for the majority of creditors.

83.     While it is true that the Receiver has expended efforts and money into the pendency of the Receivership Action, these efforts and costs are not necessarily "wasted," as the money and time expended by the Receiver could assist a bankruptcy trustee, or the Debtor-in-possession, in marshalling its assets and proposing a reorganization. *See, e.g., In re Ceiling Fan Distrib., Inc.*, 37 B.R. 701, 703 (Bankr. M.D. La. 1983) (declining to abstain and stating that significant legal work done in the state court was not wasted as it could be helpful to a bankruptcy trustee and avoid duplication of work).

84.     Ultimately, given the Receivership Action would likely provide no recovery for the vast majority of creditors, this factor weighs against dismissal.

### B.  The Receivership Action is Neither an Alternative Forum to Achieve an Equitable Distribution, Nor an Alternative Means to Serve All Creditors

85.     For purposes of the dismissal or abstention factors, some courts hold that factors two – six should be grouped together, since "all of these factors specifically touch on the availability of an alternative forum to achieve an ***equitable*** distribution." *Acis*, 584 B.R. at 146 (emphasis in original). Accordingly, the Petitioning Creditors will address these specific factors collectively.

86.     Simply put, the Petitioning Creditors believe the Receiver is leaving valuable assets on the table, whereas pursuit of these assets would lead to a more equitable distribution to the Debtor's estate and claimants.

87.     For example, the Receiver's Motion makes no mention of pursuing other seemingly valuable assets including the potential ***$9 million*** Employee Retention Tax Credit (the "ERC") payment from the Department of Treasury. The Motion makes no mention of the ERC, which

21

could provide enough liquidity to cure *all* arrears on the Twain Lease and fund reorganization efforts, nor any mention of pursuing any causes of action against AHS.

88.     In addition, while the Receiver repeatedly states the Debtor's co-managing members mismanaged the hospital (*see* Motion at ¶¶ 42, 49(c)), AHS, and not the co-managing members, was the actual party delegated with these responsibilities under the AHS Agreements. AHS' conduct in the time leading up to the Receivership Action warrants further scrutiny as potential causes of action exist against AHS (the "Potential AHS Causes of Action") which the Receiver will not pursue.

89.     Furthermore, the Receiver has reached the conclusion to abandon potentially over-secured medical equipment and leases (which would permanently shutter the hospital), that, if cured would provide a valuable benefit for the sale or reorganization of the Debtor.

90.     In other words, more than minimal assets exist. The ERC, which could bring millions into the Estate, as well as the Potential AHS Causes of Action, and the reorganization efforts all promise to create a greater solution to the Debtor's situation than the Receivership Action. For the same reasons, the Bankruptcy Case provides a clear advantage to *all* creditors (with the exception of Twain, AHS, and the Receiver) who otherwise would be shut out in the Receivership Action.

91.     Here, "a federal bankruptcy proceeding is necessary in order to achieve an equitable result in this case," as this forum has "useful tools available to the Alleged Debtors in a bankruptcy case that would be lost if this court were to ultimately abstain." *In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 729 (Bankr. S.D.N.Y. 2007). A bankruptcy case could potentially avoid both pre- and post-Receivership Action liens and transfers, recovering funds for the benefit of all creditors.

6902283/2/22516.000

92.    Furthermore, this Court will provide for a more equitable distribution of to the WARN Claimants, who are being ignored in the Receivership Action. Certain bankruptcy courts have even found that WARN Claimants are entitled to administrative priority treatment.[7]

93.    Accordingly, it is evident that no alternative forum exists "to address the pertinent issues in this case, without the necessity of significant, additional steps being taken by the parties in the state court." *Id.*

### C.  The Petitioning Creditors Sought the Involuntary Petition in Good Faith

94.    The Motion suggests that the Petitioning Creditors may have filed the Involuntary Petition for a goal other than for a proper bankruptcy purpose, but the simple fact could not be more than clear – the Petitioning Creditors' purpose in filing the Involuntary Petition was to ensure that ***all*** creditors (including them) are treated fairly and receive an equal distribution from the Debtor's assets, instead of being left with nothing in the pending Receivership Action.

95.    The filing of an involuntary bankruptcy petition is always a "litigation tactic." *In re Marciano*, 459 B.R. 27, 50 (B.A.P. 9th Cir. 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013). "Whether the filing is inappropriate is a fact-dependent determination." *Id.*

96.    The cases cited by the Receiver are all distinguishable. All of the cases revolve around the finding of bad faith for situations where a debtor seeks to avoid collection or other litigation by creditors (sometimes through the filing of a petition by related family members). *See Matter of Winn*, 49 B.R. 237, 238 (Bankr. M.D. Fla. 1985) ("This record leaves no doubt that the Chapter 11 case was filed as an attempt by the [d]ebtor to circumvent or escape the consequences of the contempt judgment issued by a court of competent jurisdiction and it was never a legitimate

---

[7] *See In re World Marketing Chicago, LLC*, 564 B.R. 587, 596 (Bankr. N.D. Ill. 2017) ("The WARN Class has met its burden by proving the [WARN claims] meets the statutory requirements provided by section 503 of the Bankruptcy Code" to constitute administrative priority claims.

aim to be achieved under the rehabilitation provisions of Chapter 11."); *F.D.I.C. v. Cortez*, 96 F.3d 50, 50 (2d Cir. 1996) (petition filed to avoid the enforcement of promissory notes executed by the debtor in favor of a bank); *In re Glob. Ship Sys., LLC*, 391 B.R. 193, 203 (Bankr. S.D. Ga. 2007) (petition filed to stay a scheduled non-judicial state foreclosure action); *In re Corto*, No. 93-CV-0175E(H), 1995 WL 643372, at *1 (W.D.N.Y. Oct. 18, 1995) (bankruptcy filed in an attempt to avoid a state court lawsuit by a creditor).

97. None of the facts are similar here. While certain of the Petitioning Creditors undoubtedly, as investors, have a relationship with Jeffrey Ahlholm and Lawrence Feigen (the Debtor's co-managing members), these relationships by no means raise to the level as the cases cited by the Receiver. Notably, none of these parties have familial relationships.

98. Conversely, the Petitioning Creditors are all sophisticated parties, several of whom hold law licenses, and they hold arms-length professional relationships with the Debtor's co-managing members. The Debtor's co-managing members hold no control whatsoever over the Petitioning Creditors. The Petitioning Creditors actively followed the Receivership Actions, potentially with a keener eye than Mr. Ahlholm and Mr. Feigen.

99. As mentioned in the Receiver's Motion, three of the Petitioning Creditors have even been involved in the Receivership Action (although any suggestion that they actively participated beyond monitoring that case is hyperbole). Their individual experiences in the Receivership Action, specifically the Receiver's statement that no recovery should be expected, directly led the Petitioning Creditors to file the involuntary petition with the straightforward purpose of obtaining a recovery in this Court.

100.    This maneuver is a valid bankruptcy purpose. As explained in *Acis*, 584 B.R. at

148–49, in analyzing the seventh factor on the purpose for which bankruptcy jurisdiction is sought,

the *Acis* bankruptcy court stated:

> Here, the facts show that there was no inappropriateness behind Mr. Terry's decision to file the Involuntary Petitions. Specifically, Mr. Terry repeatedly and credibly testified that the purpose for filing the Involuntary Petitions was to ensure that creditors (including him) were treated fairly and received an equal distribution from the Alleged Debtors' assets, not to gain some sort of advantage in the state court. This testimony was absolutely consistent with additional evidence showing that, since the entry of the arbitration award, there has been a calculated effort (largely by Highland) to effectively liquidate the Alleged Debtors. Unlike the bankruptcy court in *In re Selectron Mgmt. Corp.*, which had no evidence or "smoking gun" showing that steps were being taken by the alleged debtor to evade payment on the petitioning creditor's judgment, thereby necessitating abstention, this court has heard ample evidence showing that the Alleged Debtors, with the aid of Highland, were transferring assets away from the Alleged Debtors, so that Mr. Terry would have nowhere to look at the end of the day.
>
> In light of the court's analysis of all the seven factors above, the Alleged Debtors have not credibly shown how both the Alleged Debtors and the creditors are better served outside of bankruptcy. If this matter were to remain outside of bankruptcy, there seems to be a legitimate prospect that the Alleged Debtors and Highland will continue dismantling the Alleged Debtors, to the detriment of Acis LP creditors. Abstention would fly in the face of fundamental fairness and the principles underlying the Bankruptcy Code.

584 B.R. at 148–49.

101.    The facts are analogous here. Here, as in *Acis*, the Petitioning Creditors, in response

to a situation where they stand to lose all possibility of recovery, filed a bankruptcy petition to

ensure equal treatment and distribution.

102.    Furthermore, assuming *arguendo* that the Petitioning Creditors were found to have

less than "pure" motives, an opportunity still exists for additional creditors to join in the petition.

As explained under section 303(c): "[a]fter the filing of a petition under this section but before the

case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent,

other than a creditor filing under subsection (b) of this section, may join in the petition with the

same effect as if such joining creditor were a petitioning creditor under subsection (b) of this

section." 11 U.S.C. § 303; see also Fed. R. Bankr. P. 1003(b) ("If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in §303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.").

103.    In conclusion, the Receiver fails to satisfy his "substantial" burden of demonstrating he is entitled to the "extraordinary" relief of dismissal or abstention. *See EHT US1*, 630 B.R. at 433 (stating that "the party seeking abstention bears the burden of proof and it is substantial") (*quoting In re Kennedy*, 504 B.R. 815, 828 (Bankr. S.D. Miss. 2014)).

## RESERVATION OF RIGHTS

Given the limited scheduling on this Motion, the Petitioning Creditors' investigation into the facts are still ongoing, and, as such, the Petitioning Creditors expressly reserve all rights to supplement or amend this Response with additional facts, supporting authority, and exhibits, as necessary.

## CONCLUSION

**WHEREFORE**, the Petitioning Creditors respectfully request that this Court enter an order: (i) denying the Motion for lack of proper notice; (ii) denying the Motion for lack of standing; or (iii) declining to dismiss or to abstain; and (iv) granting any additional and further relief as this Court deems just and equitable.


Dated:  September 15, 2023            */s/ Eric M. Sutty*
                                       Eric M. Sutty (No. 4007)
                                       **ARMSTRONG TEASDALE LLP**
                                       1007 North Market Street

Wilmington, DE 19801
Telephone: (302) 416-9671
Email: esutty@atllp.com

-and-

Aaron L. Hammer (IL #6243069)
*Admitted Pro Hac Vice*
Nathan E. Delman (IL #6296205)
*Admitted Pro Hac Vice*
Dante Wen (IL #6333529)
*Admitted Pro Hac Vice*
**HORWOOD MARCUS & BERK
CHARTERED**
500 West Madison, Suite 3700
Chicago, IL 60661
Telephone: (312) 606-3200
Email: ahammer@hmblaw.com
Email: ndelman@hmblaw.com
Email: dwen@hmblaw.com

*Counsel to the Petitioning Creditors*