# EXHIBIT B

### SUPPLEMENTAL DECLARATION OF JEFF AHLHOLM

I, Jeff Ahlholm, declare as follows:

1.      I am the Co-Managing Member and a creditor of SA Hospital Acquisition Group, LLC ("SAH") and SA Hospital Real Estate Holdings, LLC ("SARE") along with Lawrence E. Feigen, since June 2021. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2.      Recruiting a new operator (buyer) of South City Hospital has historically been a challenge, made even more difficult with not being able to provide prospective candidates recent financial and operating performance data since May 2022. As a licensed investment banker, I was a buyside advisor on the last two Bankruptcy 363 Sale auctions of this hospital, formerly known in those auctions as St. Alexius Hospital, in 2018-9 and in 2020. I also am very familiar with private sale activities of this asset that go back much further in years.

3.      The pool of prospective buyers is very narrow due to the current financial health of the hospital, the St Louis hospital market, and its patient population. With marketing challenges are further exacerbated by the current and historical operating model, which is as a full-service short-term acute hospital with Emergency Room services. Having now experienced firsthand as an owner and through the objective lense of analyzing annual financial performance since 2013, there is simply too much overhead and not enough reimbursement to service the majority of this hospital's patients, who are majority Medicaid with an additional high % of uninsured. Based on the above, I believe a successful Buyer has to break from the same past mistakes and operate the facility as a predominately acute psych facility with an urgent care and limited medical-surgical acute services.  Additionally, a successful Buyer should be an entrepreneur that is singularly committed to operating this particular facility (not distracted with managing a large portfolio), committed to servicing a neglected population, have considerable experience with supplementing the standard patient reimbursement practices, and of course have

1  extensive experience servicing an acute psych patient population and managing an acute

2  psych operation within a short-term acute setting.

3      4.      The SAH Reorganization Plan was first drafted in March 2023, with a

4  number of its major components made known to Twain prior to Twain forcing the

5  Receivership. The plan and its participants were disrupted twice by the Receivership over

6  the last three months. The pre-Receivership Prospective Buyer continues its interest in

7  moving forward, but not with the Twain Receiver and/or if forced to purchase the real

8  estate at closing, as this Buyer's position is that the hospital operations need to be

9  stabilized before qualifying for third party senior debt to support the real estate purchase.

10  SAH agrees with this position.  This fact is now even more true with the complete

11  shutdown of the hospital by Twain and Receiver.

12      5.      The SAH Reorg plan supplements the pre-Receivership Prospective Buyer's

13  team with a Healthcare Facility Management Company that specializes in providing full

14  management and regulatory compliance services to distressed healthcare facilities, and has

15  previously and successfully served as a Receiver / Chief Restructuring Officer in prior

16  engagements.

17      6.      The $530,000 in professional fees charged by the Receivership through July,

18  plus the $150,000 per month estimated to wind down the hospital over 5 months, is

19  actually greater in cost than the 6-month Management Consultant contract to restart and

20  ramp up the hospital operations to maintain and create greater value for SA Creditors.

21  Simply put, the Receivership charges more in monthly fees to liquidate the assets into

22  nothing.

23      7.      Per numerous appraisals, the market value of the South City Hospital campus

24  as re-purposed commercial real estate is a fraction of the value compared to a licensed,

25  operating short-term acute hospital.

26      8.      The proposed SAH Reorg Plan provides and budgets for a partial, cost-

27  controlled re-opening of the hospital within 90 days of its recent shutdown to re-establish

28  valuable licensing and contractual status. Included in the proposed SAH Reorg Plan are the

1  26-week cash budget (which is more customary with hospital bankruptcies), DIP

2  financing, pro forma creditor waterfalls, ramp-up operating plan and asset purchase term

3  sheets.

4        9.     Although SAH ended its formal marketing and implementation planning on

5  June 1, SAH did restart conversations with the pre-Receivership Prospective Buyer and

6  back-up candidates during the few days in August when permitted to do so. I am confident

7  that there are two buyers willing to sign onto the following revised purchase terms:  1) Up

8  to $6 million DIP based on Buyer's 100% coverage of hospital operating costs to restart

9  and ramp-up under IMA, plus 3) 5-year equipment lease from SAH Creditors with gross

10  monthly rate of $115,000 (estimated net of $4.5 million to SAH Creditors), plus 4) $5M

11  Seller Note with maximum term of 5-years, but with accelerators based on post-closing

12  financial performance that can fully payoff the Seller Note to SAH Creditors within 3

13  years, plus 5) Ground Lease Rent to Twain with required full purchase (payoff) within 18-

14  months, and 6) 80% share of current Residency Slot contracted payments (net of $8.6

15  million) provided the contract can be re-established.

16        10.    The SAH Plan provides for up to $18.1M in recovery to SAH Creditors plus

17  lawsuit settlements plus any remaining DIP/cash balances after professional fees, and this

18  does not include a $21 million purchase of the real estate that pays off a majority of

19  Twain's total debt.  By comparison, the Receiver's plan is to liquidate all assets, which I

20  estimate to be under $18 million in net proceeds to all creditors including the real estate,

21  and with all of those proceeds going to Twain, leaving an approximate $10 million

22  shortfall with Twain; only the NFS Note/lien is paid off through repossession and lawsuit,

23  and all other SAH Creditors get zero. The lawsuits and residency slot contract payments

24  also never materialize.

25        11.    Finally, this challenged, inner-city community hospital is a needed asset for

26  the City of St Louis and for this neighborhood. Per the Receiver, attempts were made to

27  sell, or at least get financial support from, the City and/or the two large hospital systems

28  that make up the rest of the St Louis hospitals. Although everyone agreed that South City

3

Hospital needs to stay open, no money or deal was forthcoming or secured by the

Receiver. But the local news stories are accurate. The community need for this hospital

remains even without immediate local support. The prospective buyer(s) envision a longer-

term approach with multiple avenues to eventually gaining greater support for the hospital.

12.    In addition to the four petitioning SAH Creditor claims of Haddad

($2.625,000), Goldberg Healthcare ($535,000),  Frank Saidara ($110,000) and Yoel Pesso

($500,000), SAH estimates approximately $30,000,000 in non-Twain creditors.

13.    I declare under penalty of perjury under the laws of the State of California

that the foregoing is true and correct.


Executed September 15, 2023


/s/ Jeff Ahlholm
Jeff Ahlholm