## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SA Hospital Acquisition Group, LLC, | Case No. 23-11367 (BLS) |
| Debtor. | Re: Docket No. 22 |

### PETITIONING CREDITORS' REPLY IN SUPPORT OF EMERGENCY
### MOTION TO ENFORCE THE AUTOMATIC STAY AND MOTION FOR SANCTIONS

Goldberg Healthcare Partners, LLC, Fariborz Saidara, Matthew Haddad, and Yoel Pesso (collectively, the "Petitioning Creditors"), by and through the undersigned counsel, hereby file their reply (this "Reply") to the *Joint Response of Receiver and Twain GL XXV, LLC to Petitioning Creditors' Emergency Motion to Enforce the Automatic Stay* (the "Joint Response") filed by MorrisAnderson & Associates, Ltd. ("Receiver") and Twain GL XXV, LLC ("Twain") and the *Objection to Petitioning Creditors' Motion to Enforce the Automatic Stay* ("AHS' Response," and together with the Joint Responses, the "Objections") filed by American Healthcare Systems Missouri, LLC ("AHS" and collectively with the Receiver and Twain, the "Violating Parties"), and in support of their *Emergency Motion to Enforce the Automatic Stay and Motion for Sanctions* (the "Motion") [Dkt. No. 11], respectfully state as follows:[1]

### ARGUMENT

1.     Essentially, the Objections argue that the automatic stay was not violated by: (a) the continuation of the Receivership Action, after the date of the Involuntary Petition (August 31, 2023, the "Involuntary Petition Date")), and the entry of the September 1 Order; and (b) the Receiver's continued dissipation of Estate assets, most notably the unauthorized, post-petition

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them as in the Motion.

1

transfer of $800,000 to Twain, was merely "conducting" lawfully permitted business by the Receiver who incidentally closed the business operations over a month ago. The Joint Response further raises red herrings to distract this Court from the crux of the issue – the Violating Parties' willful violation of the automatic stay to distribute Estate assets and otherwise continue the Receivership Action.

2.      As explained *infra*, these assertions rest on a flawed premise that the Receiver was, and is still, without any approval from this Court, authorized to conduct the business of the Debtor (it is not), as well as a misunderstanding of the interplay between section 303(f) and the automatic stay's broad protection. Moreover, the red herrings raised by the Joint Response have no merit.

## I.      The Receiver Is Not Authorized to Conduct the Business of the Debtor and Is Improperly Exercising Control over Estate Property

3.      The Objections do not dispute that the Violating Parties received notice of the Involuntary Petition prior to the events challenged as automatic stay violations in the Motion. The Objections also do not dispute that the filing of an involuntary petition commences a federal bankruptcy case, 11 U.S.C. § 303(b), and creates an estate, 11 U.S.C. § 541(a), upon which the automatic stay arises as of the filing of the involuntary petition. 11 U.S.C. § 362(a); *In re Student Fin. Corp.*, 378 B.R. 73, 78 (Bankr. D. Del. 2007).

4.      Upon the filing of an involuntary petition, section 303(f) of the Bankruptcy Code permits a *debtor* to continue to operate its business during the gap period. *See* 11 U.S.C. § 303(f).[2] Given that it needs to be outright stated, ***the Receiver is not the Debtor***. The Violating Parties snub

---

[2] Section 303(f) states, in relevant part: [n]otwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and *the debtor* may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.") (emphasis added) 11 U.S.C. § 303(f). Here, it is undisputed that such business is hospital operations.

2

this core tenet of federal bankruptcy law, and the Objections provide no supporting authority for the suggestion that a state court appointed receiver is able to act on behalf of a debtor under section 303(f) (it cannot).

5.      As far as the Petitioning Creditors can tell, the Joint Response implicitly bases its perceived authority to continue operating the Debtor's business on the Receivership Order and the Missouri Commercial Receivership Act (R.S.Mo. § 515.500 *et seq.*). However, the Joint Response fails to acknowledge that the Receiver's rights were superseded with the filing of the involuntary petition, and that the Receiver then carried the burden of obtaining this Court's permission to continue the Receivership Action and act under the Receivership Order.

6.      As detailed in the Motion, the Bankruptcy Code draws a clear distinction between receiver and debtor. A receiver appointed by a state court is a "custodian" within the meaning of section 101. *See* 11 U.S.C. § 101(11)(A).

7.      Upon filing of the bankruptcy petition, a custodian of the debtor's property *must* deliver the property to the bankruptcy trustee. 11 U.S.C. § 543(b); *Sovereign Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005). Furthermore, a custodian is generally *prohibited* from administering the property of the debtor after the filing of the bankruptcy petition or taking *any* action except what is necessary to preserve the property. 11 U.S.C. § 543(a); *see In re Lizeric Realty Corp.*, 188 B.R. 499, 506 (Bankr. S.D.N.Y. 1995), *as amended* (Nov. 28, 1995) ("Under § 543 of the Code, a custodian who has knowledge of the commencement of a case under the Code is barred from taking any further action in the administration of the debtor's property and must deliver to the debtor any assets of the estate in his possession at the time he learns that a bankruptcy case was filed.") (collecting cases).

3

8.      Accordingly, as of the bankruptcy filing, the federal law superseded the Receiver's rights under the Receivership Order and state law, and the Receiver was required to comply with section 543's turnover provisions.[3] As such, in cases similar to this Case where a petition is filed and a party (such as a receiver) seeks dismissal or abstention, ***receivers file motions seeking excusal from the turnover requirements until a federal court rules on dismissal or abstention***.[4] *See, e.g., In re Koffee Kup Bakery, Inc.*, No. 21-10168, 2022 WL 141516, at *2 (Bankr. D. Vt. Jan. 14, 2022) (receiver filed motion seeking excusal pending decision on motion to dismiss); *In re Corp. & Leisure Event Prods., Inc.*, 351 B.R. 724, 727, fn. 6 (Bankr. D. Ariz. 2006), *abrogated by In re Sino Clean Energy, Inc.*, 901 F.3d 1139 (9th Cir. 2018) (receiver filed excusal motion alongside motion to dismiss voluntary petition); *Baron v. Schurig*, No. 3:13-CV-3461-L, 2014 WL 25519, at *6 (N.D. Tex. Jan. 2, 2014), *aff'd in part, rev'd in part and remanded sub nom. In re Baron*, 593 F. App'x 356 (5th Cir. 2014) (noting the bankruptcy court's excusal of the receiver from turnover while motions to dismiss were pending); *In re Skybridge Spectrum Found.*, No. 21-00005-ELG, 2021 WL 2326595, at *1 (Bankr. D.D.C. June 3, 2021), *appeal denied, judgment aff'd*, No. 21-BK-5-ELG, 2023 WL 5561105 (D.D.C. Aug. 29, 2023) (mentioning the receiver's filing of a motion to dismiss alongside a motion to excuse turnover).

---

[3] *See In re Bodenheimer, Jones, Szwak, & Winchell L.L.P.*, 592 F.3d 664, 671 (5th Cir. 2009) ("[section 543] governing a superseded custodian's post-petition duties states explicitly that unless the custodian is expressly authorized by the bankruptcy court to continue in the administration of the estate, the custodian is restricted to delivering all property to the trustee and filing an accounting of all property that came into the custodian's possession.").

[4] While section 543(d) permits the bankruptcy court in its discretion to excuse a custodian's strict compliance with the turnover provisions of section 543(a) and (b) "if the interest of creditors would be better served by permitting the custodian to continue in possession of the property," the party seeking excusal from turnover bears the burden of proof by a preponderance of the evidence, *see In re Falconridge, LLC*, No. 07-BK-19200, 2007 WL 3332769, at *7 (Bankr. N.D. Ill. Nov. 8, 2007) (collecting cases), given that a "strong presumption" exists that the debtor should be permitted to remain in possession. *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003).

9.      Yet, here, the Receiver did not ask this Court for permission, but instead proceeded to the State Court for orders releasing Estate funds and otherwise continuing the Receivership Action. The Joint Response is utterly silent on this point as neither the turnover provisions of section 543, nor permissive excusal thereof, are addressed *anywhere*.

10.     Despite a few passing references to section 303(f) for the statement that the business of the debtor is entitled to continue in the gap period, the Joint Response fails to cite <u>*any*</u> supporting authority for the proposition that a *receiver* (statutory defined as a *custodian*) can somehow assume the *debtor's* right to operate the business under section 303(f) without bankruptcy court permission.

11.     The facts tell a simple story – the Receiver was notified of the Involuntary Petition, ignored the statutorily prescribed turnover requirements of section 543, bulldozed ahead in the Receivership Action to obtain the September 1 Order, and dissipated Estate assets – notwithstanding that its rights to act on behalf of the Debtor were superseded altogether by the filing of the Involuntary Petition. Accordingly, because the Receiver wrongfully exercised control over Estate property, the Receiver has violated (and is *still* violating) the automatic stay.

## II.      The Post-Petition Events Unequivocally Violated the Automatic Stay

12.     Assuming *arguendo* that the Receiver could conduct the business of the Debtor without this Court's permission (it could not), the continuation of the Receivership Action, the entry of the September 1 Order, and the transfer of Estate assets to Twain, all violated the automatic stay.

13.     As stated by one bankruptcy court, "the fact that section 303(f) specifically exempts debtors from § 363 of the Code, but does not exempt debtors from any other Code sections, indicates that the affairs of involuntary debtors are subject to all other sections of the code,

including § 362, the automatic stay provisions[.]" *In re Gaudreault*, 315 B.R. 1, 7 (Bankr. D. Mass. 2004) (quoting *In re BankVest Cap. Corp.*, No. 99-47760-JBR, 2003 WL 1700978, at *1 (D. Mass. Mar. 28, 2003), *aff'd sub nom. In re Bankvest Cap. Corp.*, 375 F.3d 51 (1st Cir. 2004)).

14.    The Objections argue the Receivership Action's September 1 Hearing and the September 1 Order did not violate the automatic stay because the order only resolved an "inter-creditor" matter and merely "clarified" an earlier order.

15.    This assertion is wrong "but for" the September 1 Order, the Receiver did not have authority to pay Twain, and only Twain, $800,000, and entry of this September 1 Order directly facilitated that transfer.

16.    Even if the Receiver was authorized to operate the Debtor's business (again, a hospital), paying Twain $800,000 did not further any legitimate hospital operation. The Joint Response states that the post-petition payment of the $800,000 to Twain was on account of a "post-receivership revolving line of credit …. as authorized by the [August 3 Order] … to reduce interest expense on the Twain obligations that have priority over all other creditors." Joint Response, ¶ 35. This statement is significant – it admits the payment was to reduce interest on a *pre-petition debt*, and also fails to provide *any* supporting details on the application of such funds (such as the amount of interest that was avoided or the necessity of such a high payment).[5]

17.    The Petitioning Creditors are compelled to point out how the Receiver views "conducting business." On the one hand, the Receiver shut down the hospital and terminated its employees, allegedly without proper WARN notification. At the same time, the Receiver made an $800,000 payment to Twain, and it was so urgent that the Receiver could not obtain this Court's permission. The irony here should not be lost on this Court.

---

[5] Upon information and belief, this $800,000 represented the unpaid pre-petition lease payments due to Twain since January 1, 2023.

18.     Even *if* the Receiver was not superseded from acting in the business of the Debtor (it was), this Post-Petition September 5 Transfer served no valid purpose of maintaining the business of the Debtor (such as paying employees, critical vendors, or any other parties providing post-petition value) nor was it necessary to preserve the Debtor's property.[6]

19.     Additionally, while the Receiver was the primary actor, Twain directly benefitted from the Receiver's actions, and both Twain and AHS consented to the entry of the September 1 Order. Accordingly, all of the Violating Parties violated of the automatic stay.

20.     Therefore, as stated in the Motion, because the September 1 Order was obtained in a state court proceeding without obtaining relief from the automatic stay, it is void *ab initio*. *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991), *reh'g granted and opinion vacated* (Jan. 10, 1992), *opinion reinstated on reh'g* (Mar. 24, 1992) ("Absent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio*."); *Raymark Indus., Inc. v. Lai*, 973 F.2d 1125, 1132 (3d Cir. 1992) ("bankruptcy court[s]… has the power to vacate actions taken in violation of the automatic stay.").

21.     As to the $800,000 post-petition transfer to Twain, as this Court knows, generally court approval is required for post-petition payments of pre-petition debts, the payment of which can be clawed back under section 549 if not authorized. *See* 11 U.S.C. § 549(a).[7] With respect to involuntary cases, certain post-petition payments may not be avoidable where "to the extent any value, including services, *but not including satisfaction or securing of a debt that arose before the*

---

[6] Even if the September 1 Order is not held to be void *ab initio*, a trustee may be able to avoid Twain's superpriority administrative expense claim. The Receiver, as a "highly capable firm" is well aware of this possible avoidance, calling into question the Receiver's purpose of doing so, as alleged, "to save money and to preserve [Estate] property." Joint Response, ¶ 35.

[7] *See, e.g., In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 727 (Bankr. S.D.N.Y. 2007) ("The Court did not authorize the payment of any pre-petition debts, and if estate funds were used by anyone, including the Receiver, Macson or EALC, during the gap period to pay pre-petition debts, the payments can be avoided under § 549.").

*commencement of the case*, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has." 11 U.S.C. § 549(b) (emphasis added).

22.    Taken as a whole, the Receiver's decision not to seek permission from this Court, continue the Receivership Action, and to transfer Estate assets to Twain on account of a pre-petition debt, Twain's receipt of benefits under the September 1 Order, and AHS' consent, are flat out stay violations.

### III.    The Joint Response Attempts to Distract this Court with Red Herrings

23.    The Joint Response devotes almost half of its argument (four pages of nine) to side points such as: challenging the Petitioning Creditors standing; claiming judicial immunity; and alleging improper procedure. These tangential arguments seek to distract the Court from the crux of the issue – the Violating Parties' brazen and impermissible violations of the automatic stay. The Petitioning Creditors will respond in kind.[8]

24.    With respect to standing, the Joint Response's position is paradoxical. On one hand, the Joint Response (filed by the Receiver and Twain) argues that any "general" claim for enforcing the automatic stay belongs to the Estate and its trustee. Joint Response, ¶ 20. On the other hand, the Receiver argues that only it may appear for, and act, on behalf of the Debtor. *Motion to Dismiss*, [Dkt. No. 22, ¶ 6]. ***Taken to its logical conclusion, the Joint Response posits the only party that can pursue the automatic stay violation against the Receiver is the Receiver.***

25.    In any event, the Receiver is incorrect, and the Petitioning Creditors have standing to seek this relief given the Receiver's dissipation of Estate assets. Jurisprudence has long

---

[8] In light of the nature of the shortness of a reply brief and the absurdity of the arguments, the Petitioning Creditors will keep their response succinct, but reserve the right to supplement their arguments should this Court desire more briefing.

established that the "irreducible constitutional minimum" of standing requires that the plaintiff, or movant, demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[9]

26.    Section 362(k) of the Bankruptcy Code provides: "[e]xcept as provided in paragraph (2), an *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[10] 11 U.S.C. § 362(k) (emphasis added). Section 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b) (emphasis added). Read jointly, the statutes support the proposition that creditors have standing to challenge automatic stay violations and enforce the automatic stay.[11]

27.    Furthermore, even if this Court determines the Petitioning Creditors lack standing to bring this Motion, this Court can enforce the automatic stay *sua sponte*.[12] In *Assoc. of St. Croix*

---

[9] *See also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016).

[10] The Third Circuit Court of Appeals has adopted a broad interpretation of the term "individual" for purposes of section 362(k), which includes corporate entities. *See In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990).

[11] *See In re Bennett*, 317 B.R. 313, 318 (Bankr. D. Md. 2004) ("The stay is intended to protect the interests of creditors as well as debtors, and 'those persons whom Congress has designated as beneficiaries of the stay have standing to asserts its violation.'") (quoting *In re Advanced Ribbons and Office Prods., Inc.*, 125 B.R. 259, 263 (9th Cir. BAP 1991)); *see St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 543 (5th Cir. 2009) ("When 11 U.S.C. § 1109(b) is read in conjunction with § 362(k), it becomes clear that Congress did not enact § 362(k) solely for the benefit of debtors. Accordingly, based on § 362(k)'s plain language, the above-discussed congressional purpose of § 362(k) to provide both debtor and creditor protection, and the weight of authority finding creditor-standing, we hold debtors and creditors are entities whose grievances fall 'within the zone of interests' protected by § 362(k)."); *Paradise Towing, Inc. v. CIT Grp./Sales Fin., Inc.*, 368 B.R. 569, 572 (W.D. Tex. 2005) ("It does not seem logical that Congress would intend to protect creditors under the automatic stay provisions, yet deny them relief under section 362[k].").

[12] *See Croix Condo*, 682 F.2d at 449 (3d Cir. 1982) (raising issue of automatic stay *sua sponte*); *see also In re Jorge*, 568 B.R. 25, 37 (Bankr. N.D. Ohio 2017) ("Indeed, a violation of the automatic stay is so important to the authority

*Condo. Owners v. St. Croix Hotel Corp.* the Third Circuit Court of Appeals, in explanation of the

purposes of the automatic stay, quoted the House Report accompanying the Bankruptcy Reform

Act of 1978 as stating:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors....
>
> Subsection (a) defines the scope of the automatic stay, by listing the acts that are stayed by the commencement of the case. The commencement or continuation, including the issuance of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case is stayed under paragraph (1). The scope of this paragraph is broad. All proceedings are stayed, including arbitration, license revocation, administrative, and judicial proceedings. Proceeding in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals.

682 F.2d 446, 448 (3d Cir. 1982).

28.     "[A] stay violation is not just a private injury. It strikes at the entire bankruptcy

system and all parties for whom it was designed." *In re Rushing*, 443 B.R. 85, 97–98 (Bankr. E.D.

---

of bankruptcy courts that such courts have the power to raise the issue *sua sponte* without a motion from a party in interest."); *In re 222 Liberty Assocs.*, 110 B.R. 196, 200 (Bankr. E.D. Pa. 1990) ("a court is obliged to raise the issue of the application of the automatic stay *sua sponte*."); *In re Cinelli*, No. BR 13-19132, 2014 WL 4106030, at *4 (E.D. Pa. Aug. 21, 2014) (section 105(a) authorizes the court to act *sua sponte* in applying the automatic stay to all of the debtor's creditors involved in the state court action); *In re Clark*, 69 B.R. 885, 889 (Bankr. E.D. Pa.), *amended on reconsideration in part*, 71 B.R. 747 (Bankr. E.D. Pa. 1987) ("the stay not only may but must be invoked by the court [*sua sponte*] to protect the debtor—and the principle of equal treatment of all creditors—even in the face of a debtor's own dereliction in failing to raise the issue of the existence of the automatic stay as a defense to legal actions by creditors against him."); *In re Sklar*, 626 B.R. 750, 763 (Bankr. S.D.N.Y. 2021) ("When necessary, a court is obliged to raise the issue of the application of the automatic stay *sua sponte*.") (quoting *In re Heating Oil Partners*, No. 3:08-CV-1976 CSH, 2009 WL 5110838, at *6 (D. Conn. Dec. 17, 2009), *aff'd sub nom. In re Heating Oil Partners*, LP, 422 F. App'x 15 (2d Cir. 2011)).

Tex. 2010). As such, even if the Petitioning Creditors do not have standing (they do), this Court has the power to address the Violating Parties' automatic stay violations.

29.     Moreover, the Violating Parties' argument that a federal bankruptcy court's ability to redress violations under the Bankruptcy Code is somehow barred by state law is unavailing.[13] The U.S. Constitution makes this clear. *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause requires state law to yield if it is contrary to federal law); *In re Krause*, 296 F. App'x 575, 576 (9th Cir. 2008) ("There is no question that federal bankruptcy law does trump state law, when they are in conflict."). Furthermore, such acts in violation of the automatic stay are clearly outside the scope of employment. *Cf. Bodenheimer*, 592 F.3d at 672 (state court appointed liquidator's "service" of opposing the bankruptcy was "*ultra vires*").[14]

30.     Lastly, the contention that an adversary proceeding is required for this seek of "injunctive" relief is plainly incorrect.[15] Bankruptcy Rule 7001 defines an adversary proceeding as including "a proceeding to *obtain* an injunction or other equitable relief[.]" Fed. R. Bankr. P. 7001(7) (emphasis added).

31.     The Petitioning Creditors do not seek an injunction from the Court or otherwise. The automatic stay's "injunction is 'automatic' in that it arises [upon the commencement of a case] without the necessity of a formal court order." *In re Zack*, 623 B.R. 168, 172 (Bankr. W.D. Pa.

---

[13] The Joint Response lacks any supporting case law corroborating this position.

[14] Moreover, the Joint Response's statement that the Petitioning Creditors should have first sought relief from the state court for permission to sue the Receiver is hypocritical as it brushes away the fact that the Receiver should have first sought permission from the bankruptcy court for turnover excusal and relief from the automatic stay. *See Falconridge, LLC*, No. 07-BK-19200, 2007 WL 3332769, at *7 (the party seeking excusal from turnover bears the burden of proof by a preponderance of the evidence); 11 U.S.C. § 362(d) (requiring a party move for relief from the automatic stay).

[15] The Joint Response also lacks support for this position as well.

11

2020).[16] The injunction already exists, the Violating Parties were and remain enjoined, and the Motion merely seeks to enforce this existing injunction.

32.     Here, with the Violating Parties' aforementioned violations of the automatic stay, the filing of this Motion is regrettably *necessary* to have the Violating Parties *comply and pay damages for their violations*. Indeed, most courts agree that an adversary proceeding is not required for an action for damages for violations of the automatic stay.[17]

33.     Moreover, adversary proceedings take significantly longer to resolve than contested motions, and would give the Violating Parties more opportunities to further drain Estate assets. Upon information and belief, the Receiver has made other post-petition disbursements apart than the $800,000 transfer to Twain.

34.     It is unknown where the violations of the automatic stay have stopped, if at all. This Court must immediately enforce the automatic stay and grant actual and punitive damages to prevent further violations of the automatic stay.

## CONCLUSION

**WHEREFORE**, the Petitioning Creditors respectfully pray for this Court to enter an order: (i) enforcing the automatic stay against the Violating Parties and preventing any further prosecution of the Receivership Action or other violations of the automatic stay without further

---

[16] *See also Elder-Beerman, 195 B.R. at 1023* ("The stay protection in § 362 is 'automatic and mandatory' with the filing of the petition. The debtor need not make any motion in the bankruptcy court to invoke its protection.") (internal citations omitted).

[17] *See In re Ballard*, 502 B.R. 311, 318 (Bankr. S.D. Ohio 2013) (explaining the difference of language in Rule 7001(1) as compared to section 362(k)(1)); *In re C.W. Mining Co.*, 431 B.R. 307 (B.A.P. 10th Cir. 2009), *aff'd*, 625 F.3d 1240 (10th Cir. 2010) ("issues relate to enforcement of the automatic stay ... appropriately be resolved in a contested matter") (citing cases); *In re Meadows*, 396 B.R. 485, 498 (B.A.P. 6th Cir. 2008) ("actions to recover damages for stay violations are generally brought by motion"); *In re Nassoko*, 405 B.R. 515, 526–27 (Bankr. S.D.N.Y. 2009) ("[I]t is unnecessary to proceed by way of adversary proceeding when requesting sanctions accompanied by damages for violation of the automatic stay under § 362 of the Bankruptcy Code."); *In re Zumbrun*, 88 B.R. 250, 252 (B.A.P. 9th Cir. 1988) (same); *Fid. Mortg. Invs. v. Camelia Builders, Inc.*, 550 F.2d 47, 50 (2d Cir. 1976) (affirming granting of a motion for sanctions for violating the automatic stay); *Budget Serv. Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 291 (4th Cir. 1986) (same).

order of this Court; (ii) determining that certain, or all, of the Violating Parties have committed acts that constitute a willful violation of the automatic stay; (iii) holding that the *September 1 State Court Order* is void ab initio; (iv) awarding the Petitioning Creditors actual damages, including expenses and attorney fees, and punitive damages; and (v) granting any additional and further relief as this Court deems just and equitable.


Dated:  September 18, 2023

/s/ Eric M. Sutty
Eric M. Sutty (No. 4007)
**ARMSTRONG TEASDALE LLP**
1007 North Market Street, 3rd Floor
Wilmington, DE 19801
Telephone: (302) 416-9671
Email: esutty@atllp.com

-and-

Aaron L. Hammer (IL #6243069)
*Admitted Pro Hac Vice*
Nathan E. Delman (IL #6296205)
*Admitted Pro Hac Vice*
Dante Wen (IL #6333529)
*Admitted Pro Hac Vice*
**HORWOOD MARCUS & BERK CHARTERED**
500 West Madison, Suite 3700
Chicago, IL 60661
Telephone: (312) 606-3200
Email: ahammer@hmblaw.com
Email: ndelman@hmblaw.com
Email: dwen@hmblaw.com

***Counsel to the Petitioning Creditors***